Durst v. Swift.

# Durst v. Swift.

In cases where a person has contracted to perform an obligation in any particular county, suit may be instituted, under the statute, (Hart. Dig. Art. 667,) in that county or where the defendant has his domicil ; and it matters not whether the suit is brought for a specific performance or for damages for a failure to perform ; and where the defendant had contracted to make titles, by a certain day, at the city of Galveston, to a certain quantity of lands "located and being in the coun-"ties of San Augustine, Nacogdoches, Rusk, Houston, and the southern half of "Robertson and near the Trinity river" "and in case he fails to comply with the conditions of the above obligation" to well and truly pay a certain sum of money, it was held that the suit was within the statute.

We do not think the assignments less valid, or effectual to vest title in the plaintiff, because made by separate deeds or instruments.

Under the 5th Section of the Act of 1840, (Hart. Dig. Art. 2524,) the assignments of certain instruments were regarded as proved unless, &c. ; this was not confined to assignments which were written on the instruments.

*Quere?* Whether the 3rd Section of the Act of 1840, (Hart. Dig. Art. 2522,) which authorized the assignees of "any bond or other written instrument" to sue in their own names, and the 5th Section, (Hart. Dig. Art. 2524,) which dispensed with the proof of assignments of said instruments, include any instrument which is not for the payment of money. However that may be, they do include a written contract to convey a certain amount of land, not more specifically described than by the county, or, in the event of failure, to pay a certain amount of money ; not so, where the land is described.

Although a contract to convey be so indefinite that a specific performance will not be decreed, yet if a certain amount of money is stipulated to be paid, in the event of failure to convey, the money may be recovered.

Where a contract was regarded by the Court as a contract, virtually, for the payment of money, although not a promissory note, it was held that it was not necessary for the assignee, in a suit against the obligor, to prove the consideration of the assignments, although not under seal.

Where the defendant contracted under seal, to convey a certain quantity of lands, to lie in certain counties in the State, but not described, within a certain time, or in the event of failure, to pay a certain sum of money, in a suit by an assignee, against the obligor, for the money, it was held that it was not necessary for the assignments to have been under seal.

Where one contracts to do a particular thing, as to convey lands, and in the event of failure, to pay a certain sum of money, in a suit for the money it is not necessary to prove the failure to do the particular thing ; if that has been performed, it is matter of defence, which it is incumbent on the defendant to establish by averment and proof.

See this case for a discussion of the rules respecting stipulations for penalties and liquidated damages.

Where suit was brought on a contract to convey a certain amount of lands, to lie in certain counties, but not described, or in the event of failure, to pay a certain amount of money, (the same that was recited as the consideration of the contract to convey,) with interest from the date of the contract, and there was no evidence except the contract and assignments, the Court said, Whatever difficulty there may be in the application of these general principles, (respecting stipulations for penalties and liquidated damages) and in arriving at the real intention of the parties in certain cases, the present case is, in this respect, wholly free from difficulty; the sum stipulated to be paid, was the purchase money advanced, with interest; this, under the evidence, was the measure of damages, which would have governed the finding of the jury, without an express stipulation.

Appeal from Harris. The appellee brought suit against the appellant, in Galveston county, on a covenant, or agreement under seal, made by the latter in favor of Samuel Jones, and assigned to the plaintiff. The contract recited, that, in consideration of the sum of sixteen thousand five hundred dollars, the obligor, defendant in this suit, sold to the obligee five and a half leagues of land "located and being in the counties of " San Augustine, Nacogdoches, Rusk, Houston, and the south- " ern half of Robertson." It stipulated that "there shall be " included his own headright certificate for a league and labor " of land," which "shall be located in the southern part of the aforesaid county of Robertson, and near the Trinity river;" it is further recited that he "is not prepared, at this time," to make good and sufficient titles; whereupon it is agreed that six months shall be allowed him for that purpose; and he obliges himself " to convey and deliver to said Jones, in the " city of Galveston, his heirs and assigns, good and sufficient " titles and warrantee deeds, with patents, to the aforesaid five " and a half leagues of land, free of any charge whatsoever, " other than the consideration above named." And, " in case " he fails to comply with the conditions of the above obliga- " tion, he hereby binds himself, his heirs, executors and ad- " ministrators and assigns, well and truly to pay the said " Samuel Jones, his heirs, executors, administrators and as- " signs, the just and full sum of sixteen thousand five hun- " dred ($16,500) dollars, current money of the United States, " with interest from the date hereof; and for which he here-

" by promises to confess judgment in any Court of competent " jurisdiction or authority." The petition exhibited the assignments of the obligation; alleged as a breach, the failure of the defendant to deliver the deeds, &c.; and prayed judgment for the sum stipulated to be paid, upon the failure of the defendant to perform his obligation to make titles. The assignments, exhibited, were made by separate instruments; one not under seal.

The defendant pleaded in abatement to the jurisdiction of the Court in Galveston, he being a resident of the county of Leon. His answer contained, among other matters, a general denial.

The plea in abatement was adjudged insufficient.

The plaintiff gave in evidence the obligation, and the several assignments by which the right of the obligee was transferred to the plaintiff. The defendant objected to the reading of the assigments in evidence, without proof of their execution; but the Court overruled the objection.

The Court was requested by the defendant to instruct the jury, that it was incumbent on the plaintiff to prove, affirmatively, the non-performance by the defendant, of his obligation to make titles; and that the sum stipulated to be paid, was in the nature of a penalty. Which instructions the Court refused. There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Allen & Hale*, for appellant. I. The plea in abatement to the jurisdiction of the Court, should have been sustained. No place being designated for the payment of the money, the obligation or contract for such payment was to be performed either at the place of execution of the contract, or which was the same thing, at the place where the obligor resided. And the statute regulating practice in the District Courts, expressly required the suit to be brought on this part or clause in the contract, in the county where the defendant resided. (Hart. Dig. Art. 667.) If the ground of exception to the general rule is not clearly made out, the rule, from principles of public policy, must have the preference and the contract be construed in reference to it.

II. Proof of the execution of separate assignments, not indorsed on the obligation sued on, must be made as in case of other instruments. Article 2524 of Hartley's Digest, only refers to assignments made by indorsements. The whole Act, of which that Article forms part, must be construed together, and the Court can no more admit separate assignments of bonds, than of negotiable and commercial paper. To admit the last, would be to destroy the whole system of commercial law. " An assignable contract can be assigned only by writ-" ing on some part of the same paper which contains the con-" tract." (Estes v. Hairston, 1 Dev. 351.)

III. The assignments of a specialty must be under seal, and the plaintiff, having only produced one assignment under seal—that from Prescott to himself—has not shown any interest vested in him ; and the other assignments should have been excluded.

IV. There is no allegation in the petition, and no proof that the assignments were for a valuable consideration. (Merlin v. Manning, 2 Tex. R. 351.)

V. The Court below should not have refused to give the first charge requested by defendant ; and a new trial should have been granted, as there was no proof that the defendant had not delivered the deeds at the appointed time and place. The *onus* lay upon the plaintiff, he, having based his right of action on the negative allegation. (1 Greenl. Ev. Sec. 78.)

VI. The Court below should not have refused to instruct the jury that the sum of $16,500, specified in the obligation, was in the nature of a penalty ; and as no damages were specially proved, the verdict was excessive and a new trial should have been granted.

*Jones & Butler* and *T. H. Harrison,* for appellee. I. In answer to the first assignment of error, we refer the Court to the first Section of the District Court Act of 1846, which expressly provides that where a person has contracted to perform

an obligation in any particular county, suit may be instituted against him in that county. (Hart. Dig. Art. 667.)

II. The first charge asked by the defendant was, we think, properly refused. If the defendant had well and truly performed or offered to perform the conditions of the bond, it would have been for him good matter of defence to the plaintiff's action, and it would have been incumbent on the defendant to plead such performance. If he had complied with the conditions of the bond, it was a fact most properly within his knowledge, and the *onus probandi* would have been upon him. The reverse of this doctrine would require the plaintiff to prove a negative in reply to the affirmative matter set up by the defendant in his answer.

III. By the fifth Section of an Act to dispense with the necessity of protesting negotiable instruments, passed January 25th, 1840, there was no necessity for the plaintiff to prove the execution of the different assignments referred to in the bill of exceptions, for the defendant had no plea denying the genuineness of said assignments, nor an affidavit of the nature contemplated by the statute.


WHEELER, J. This suit was brought in Galveston county, under the provision of the fourth exception contained in the first Section of the Act of 1846 ; which prescribes that, with certain enumerated exceptions, suit must be brought in the county where the defendant has his domicil. The exception in question is as follows : " In cases where a person has con- " tracted to perform an obligation in any particular county ; " in which case suit may be instituted in that county, or where " the defendant has his domicil." (Hart. Dig. Art. 667.)

There can be no question that the present case is plainly within the letter of the statute. But, it is insisted that, upon the failure of the defendant to comply with his obligation to make titles, the contract became an obligation for the payment of money generally, and not at the place designated for the performance of the contract, and that the case, therefore, does

not come within the provision of the exception in the statute; but suit must have been brought in the county of the defendant's residence.

This argument would narrow the exception, in its application, to cases where suit is brought for specific performance, upon contracts like the present; and would exclude from its provision, suits for pecuniary compensation for the breach of the contract. It would make the right to sue in the county where the contract is to be performed, depend upon the character of the suit, and the nature of the relief sought: and it would, in effect, thus engraft upon the statute an exception or condition, which the Legislature has not made. The words of the statute, and the apparent intention of the provision, embrace as well suits for damages for the breach of a contract, as suits to enforce specific performance. And we do not think the Court would be warranted in adopting a construction which would limit its application to suits of the latter description only.

It is objected to the judgment, that there was no proof of the execution of the assignments of the obligation, to the plaintiff; and it is insisted, that having been made by separate instruments, and not indorsed on the obligation, or instrument assigned, proof of their execution should have been made, as in case of other instruments. And the argument goes further, and questions the validity of the assignments, because not made by indorsement.

We do not think the assignments less valid, or effectual to vest title in the plaintiff, because made by separate deeds or instruments. On this question we are not without authorities in point. (2 Bibb, 83; 7 Mis. R. 120.) Nor do we think the necessity of proof of the execution of an assignment, dependent on its having been made upon the same paper which contains the contract; or that the fact, that the assignments in this case, were not so made, imposed upon the plaintiff the necessity of proving their execution. But, whether the contract, sued on, is embraced within the third Section of

the Act of 1840, providing for the assignment of instruments in writing, (Dig. Art. 2522,) and, consequently, whether the assignments were admissible in evidence under the 5th Section of the statute, (Id. Art. 2524,) without proof of their execution, is a question of more difficulty.    The words "any bond, or other written instrument," employed in the 3rd Section, as descriptive of the character of instruments, which it is provided may be transferred by assignment, so as to enable the assignee to sue upon them in his own name, are sufficiently comprehensive to embrace all written contracts, whatever the subject matter.    But it seems from the context, that the Legislature had in view only such bonds, and other instruments, as contained stipulations for the payment of money.    Similar statutes have been enacted in other States, containing especial and express provision for the assignment, not only of bonds and notes for the payment of money, but all written undertakings for the payment or delivery of specific articles of property.    (1 Scam. 34 ; Hardin, (Ky.) R. 8, 562.)    The provision of our statute is less definite and explicit; and, considered in reference to the context, seems less comprehensive in its intention.    The proper construction would seem to be that, which will make it embrace all those instruments which are comprehended in terms, and which may be fairly supposed to have entered into the legislative intention, in enacting the statute.    This construction will comprise within the provision, all contracts which contain a stipulation for the payment of money: and, it is conceived, it will include the contract sued on in this case.    This is a contract for the conveyance of five and a half leagues of land, lying in certain named counties, but not by any defined or certain boundaries, or local description.    It is, in other words, a contract to make titles to so much land, generally, but not to any particular tract of land, so described as to be capable of being identified, and made the subject of a suit for specific performance.    And in case of the failure of the defendant, to comply with his undertaking to make the titles within the time specified, it is

stipulated that he shall, in lieu thereof, pay to the obligee, his heirs or assigns, a certain specified sum of money. It is, therefore, a contract for the payment of money, not absolutely, but conditionally; in the event of the failure to make title. And the only remedy, for the breach of this contract, was suit for the money thus conditionally stipulated to be paid. Upon the happening of the condition, it became an obligation for the payment, absolutely, of a sum certain in money. It comes, therefore, not only within the words, but the apparent intention of the statute, even if we suppose its provision intended to apply only to bonds and other instruments for the payment of money. We, therefore, conclude that the present is one of the instruments contemplated by the statute, and, consequently, that the assignments thereof were admissible in evidence, without proof of their execution.

Had the present been a bond to make title to a specified tract of land, or an undertaking to perform some other act, under a penalty, simply, for non-performance, it would, I apprehend, be different. The bond for title, in such a case, would vest in the obligee the equitable ownership; and, in a suit for specific performance, or an action of trespass to try title, by the assignee, the deed conveying the land, or assigning the obligation to the plaintiff, would require to be proved as other conveyances. But in the case of the assignment of an ordinary penal bond to make title to land, or other instrument not contemplated by the statute, the equitable ownership being in the assignee, he may sue in his own name; and no more reason is perceived for requiring proof of the consideration of the deed or writing by which the assignment was made, in that case, than for requiring proof of the consideration of the mesne conveyances in an action of trespass to try title. Such proof, it is conceived, would not be necessary. (1 N. & M. 250.) It certainly was not necessary in the present case.

It was not essential to the validity of the assignments in this case, that they should have been by deed or writing under seal. (15 Mass. R. 485; 16 Johns. R. 51; 1 N. & M. 250.)

Durst v. Swift.

It is further objected to the judgment, that the Court erred in refusing the instructions asked by the defendant. These were, 1st. That it devolved on the plaintiff to prove the non-performance, by the defendant, of his obligation to make titles; and 2nd. That the sum stipulated to be paid, in case of such non-performance, was in the nature of a penalty. And we are of opinion that the Court did not err in refusing to give these instructions. If the defendant had performed his obligation, that, unquestionably, was matter of defence, which it was incumbent on him to establish by averment and proof.

As to the sum stipulated to be paid: it not unfrequently becomes a question of some difficulty to determine, whether a sum thus agreed to be paid, in case of the breach of contract, is to be considered in the nature of a penalty, merely to cover the damages which may be actually occasioned by the violation of the agreement, or the full sum really to be paid in that event, as liquidated or settled damages, without reference to the extent of the injury sustained. It depends, it is said, on the form of the instrument, and the intention of the parties, as collected from the whole of the instrument. If the sum be mentioned simply under the denomination of a penalty, on an agreement not to do a specified thing, or to secure some advantage to the obligee, the form of the instrument, has been held to import that it is a mere penalty. And although the terms employed, *prima facie*, import liquidated damages, yet they will not be considered as such, if a contrary intention be manifest by the whole instrument. (2 Stark. Ev. 5th Am. Edit. 620.) And the Courts, it is said, have shown an inclination to view, if possible, the sum reserved, as in the nature of a penalty, rather than as stipulated damages. (Chit. on Cont. 6th Am. from 3rd London Edit. 863.) The true criterion, however, for interpreting contracts in this, as in other respects, is the real intention of the parties, to be ascertained from the terms and stipulations of the instrument. But there are certain general rules which have been adopted, to aid in ar-

35

riving at that intention. Thus; Where the parties, in the agreement, have expressly declared the sum to be intended as a forfeiture, or penalty, and no other intention is to be gathered from the instrument; where it is doubtful whether it was intended as a penalty, or not; and a certain damage, or debt, less than the penalty, is made payable, on the face of the instrument; where the agreement was evidently made for the attainment of another object, to which the sum specified is wholly collateral; where the agreement contains several matters of different degrees of importance, and yet the sum named is payable for the breach of any, even the least; and where the contract is not under seal, and the damages are capable of being certainly known and estimated. In all these cases, the sum stipulated to be paid has been treated as a penalty.

On the other hand, it will be inferred that the parties intended the sum as liquidated damages, where the damages are uncertain, and are not capable of being ascertained by any satisfactory and known rule; and, where, from the nature of the case, and the tenor of the agreement, it is apparent that the damages have already been the subject of actual and fair calculation and adjustment between the parties. Of this class, are agreements to convey land, or, instead thereof to pay a certain sum; (2 Greenl. Ev. Sec. 258, 259; 7 Johns. R. 72; 15 Id. 200; 13 Wend. R. 507;) which is the precise case we are considering. So, where the agreement provides that a certain sum shall be paid, in the event of performance or non-performance of a particular specified act, in regard to which, damages, in their nature uncertain, may arise, in case of default, and there be no words evincing an intention that the sum reserved, in case of a breach, shall be viewed only as a penalty, such sum may be recovered as liquidated damages. (3 M. & W. 545, cited in Chit. on Cont. p. 666, 866; 26 Wend. R. 630.) And there is "nothing illegal, or unreason-"able in the parties, by their mutual agreement, settling the "amount of damages, uncertain in their nature, at any sum up-"on which they may agree. In many cases, such an agree-

" ment fixes that which is almost impossible to be accurately " ascertained; and in all cases, it saves the expense and diffi- " culty of bringing witnesses to that point." (*Per* Tindal, Ch. J. in Kemble v. Farren, 6 Bing. 141.) Where a certain sum is to be paid as liquidated damages, on the violation of an agreement, at law and in equity both parties must abide by the stipulation. Finally, whatever difficulty there may be in the application of these general principles, and in arriving at the real intention of the parties, in certain cases, the present case, in this respect, is wholly free from difficulty. The sum stipulated to be paid was the purchase money advanced, with interest. This, under the evidence, was the measure of damages which would have governed the finding of the jury without an express stipulation; (Sutton v. Page, 4 Tex. R. 142;) and there can be no question that it was the sum really intended to be paid, in default of the obligor, to make titles. It had none of the characteristics of a penalty; but evidently was the sum really and justly agreed to be paid; and was rightly considered and treated by the Court, as liquidated damages.

We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.