## UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,

### v.

## REPUBLIC NATIONAL BANK OF DALLAS et al., Appellees.

### No. 4632.

Court of Civil Appeals of Texas, Eastland.

April 4, 1973.

Rehearing Denied Sept. 14, 1973.

C. Edward Fowler, Jr., Bailey, Williams, Westfall & Henderson, Dallas, for appellant.

Gary W. Maxfield, Brundidge, Fountain, Elliott & Churchill, Dallas, for appellees.

McCLOUD, Chief Justice.

Plaintiff, United States Fidelity & Guaranty Company, sued defendants, Republic National Bank of Dallas and Marion Bateson Brown, Executors and Trustees of the J. W. Bateson Estate and various Bateson trusts, on a contract. Defendants moved for summary judgment and plaintiff moved for partial summary judgment as to liability. Plaintiff's motion was denied and defendants' motion was granted. Plaintiff has appealed. We affirm.

Dolt & Dew, Inc., a construction company, requested plaintiff to provide certain contract surety bonds. Defendants owned an interest in Dolt & Dew and plaintiff requested a general indemnity agreement from defendants as a condition to providing the bonds. Defendants refused to execute the requested indemnity agreement but

did execute a general subordination agreement. Under the agreement, defendants agreed to subordinate an indebtedness of $819,970.00 owed to them by Dolt & Dew, to any claims for loss that plaintiff might have against Dolt & Dew as a result of having provided the bonds. Plaintiff alleged that Dolt & Dew became bankrupt, was unable to complete the contracts upon which the bonds had been written, and plaintiff had been required to pay or would be required to pay a sum in excess of $800,000.00 by reason of its position of suretyship on the bonds in question. The summary judgment proof reveals that the $819,970.00 indebtedness which was evidenced by a promissory note executed by Dolt & Dew to defendants together with 25,000 shares of Dolt & Dew stock owned by defendants were assigned to Hixon D. Cowan, Jr., in consideration of $100.00.

Plaintiff contends that by assigning the note to Cowan, defendants became obligated, under paragraph 6 of the subordination agreement, to indenmify plaintiff for all losses suffered as a consequence of having executed the bonds. Paragraph 6 provides:

"That in the event of the breach of any of the agreements and covenants on the part of the Creditor to be performed under this instrument, the Creditor will indemnify the Surety from and against any and all liability, loss, costs, damages, attorneys' fees and expenses of whatsoever kind or nature which the Surety may sustain or incur by reason of or in consequence of having executed said bond or bonds in defending or prosecuting, any action, suit or other proceeding which may be brought in connection therewith, in making any investigation on account thereof, and in enforcing any agreements herein contained."

Defendants contend that paragraph 6 is a penalty provision and is unenforceable. Defendants further point out that the assignment to Cowan expressly provided that the assignment of the note was "with the understanding and agreement that said note has been, and is, subordinated to other indebtedness of the corporation". Thus defendants argue that the indebtedness is still subordinated to the plaintiff's claims, and there is no breach of the agreement to subordinate, nor could any damages flow to plaintiff because of the "paper" transfer to Cowan.

In the "General Subordination Agreement" executed by the parties, the plaintiff was designated as "Surety", defendants were designated as "Creditor", and Dolt & Dew, Inc., was designated as "Contractor". The contract provided in part as follows:

"1. The Creditor agrees to subordinate and does hereby subordinate all rights and claims against the Contractor on account of said indebtedness to any and all rights, claim or claims of the Surety on account of loss, cost, damages, attorneys' fees and expenses sustained or incurred by the Surety on account of said bond or bonds, so that any such rights, claim or claims of the Surety under said bond or bonds will be paid out of the assets of the Contractor before any payment is made to the Creditor on account of the aforesaid indebtedness.

2. That in the event of receivership, bankruptcy or insolvency of the Contractor, the Creditor agrees to assign, and does hereby assign, any claim or claims that he may have on account of said indebtedness to the Surety, so that the Surety may receive dividends thereon as well as on any claim or claims that the Surety itself may have against said Contractor, until the Surety is reimbursed in full for all such loss, costs, damages, attorneys' fees and expenses.

3. That prior to the receipt by the Creditor and the Contractor of written notice from the Surety to the effect that the Contractor has performed all the conditions of said bond or bonds and that the Surety has not sustained any loss, costs, damages attorneys' fees and expenses under said bond or bonds,

Creditor and Contractor agree that said indebtedness shall remain unchanged and unliquidated and that neither will do any act or thing directly or indirectly which may result in reducing said indebtedness and, among other things, Creditor will neither demand nor accept from Contractor or others and Contractor will not make or cause others to make any payment on account of principal of said indebtedness nor will Creditor withhold or to cause others to withhold payment of any sum, due or to become due Contractor, as an offset against said indebtedness; nor will Creditor take or receive or cause others to take or receive any property of Contractor, as security or otherwise, for application to said indebtedness; nor will Creditor sell, assign, transfer, dispose of, Hypothecate or pledge to any person, firm or corporation whatsoever, any right, title or interest in and to said indebtedness or evidence thereof; nor will the Creditor sue for, or institute proceedings against the Contractor, directly or indirectly, for the recovery of the amount due on said indebtedness or any part thereof."

The rules to be applied in determining if a stipulated amount to be paid in the event of a breach is a penalty and unenforceable, were discussed at length in Stewart, et ux. v. Basey, 150 Tex. 666, 245 S.W.2d 484 (1952) where the Court said:

"The right of competent parties to make their own bargains is not unlimited. The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages. A party has no right to have a court enforce a stipulation which violates the principle underlying that rule. In those cases in which courts enforce stipulations of the parties as a measure of damages for the breach of covenants, the principle of just compensation is not abandoned and another principle substi-

tuted therefor. What courts really do in those cases is to permit the parties to estimate in advance the amount of damages, provided they adhere to the principle of just compensation. Restatement of Contracts, Sec. 339, accurately expresses the rule as follows:

'(1) An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

'(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

'(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.'

This comment on subsection (1) follows: 'b. Contracts are frequently made in which performance of very different degrees of importance and value are promised and one large sum of money is made payable as damages for any breach whatever. Since such a contract promises the same reparation for the breach of a trivial or comparatively unimportant stipulation as for the breach of the most important one or of the whole contract, it is obvious that the parties have not adhered to the rule of just compensation. In this matter neither the intention of the parties nor their expression of intention is the governing consideration. The payment promised may be a penalty, though described expressly as liquidated damages, and vice versa.'

The rule as declared in that comment is in effect the same as that declared in Williston on Contracts, Revised Edition, Vol. 3, Sec. 783, p. 2204; McCormick on Damages, Sec. 151; 15 Am.Jur., Damages, Sec. 253; and 25 C.J.S. Damages, § 111. Early in the history of this court in Durst v. Swift, 11 Tex. 273, 282, the rule was stated in this language: '* * * where the agreement contains

several matters of different degrees of importance, and yet the sum named is payable for the breach of any, even the least \* \* \* the sum stipulated to be paid has been treated as a penalty.' "

Plaintiff contends the indemnity obligation contained in paragraph 6 is an alternative agreement and not a penalty. Plaintiff asserts that the contract under consideration is an alternative contract. The agreement to indemnify is an alternative to the agreement to subordinate.

In Williston on Contracts, Sec. 781, page 1488, an alternative contract is described as follows:

"A contract may give an option to one or both parties either to perform a specified act or to make a payment; and though this form of contract cannot be used as a cover for the enforcement of a penalty, yet if on a true construction it appears that it was intended to give a real option, (that is that it was conceived possible that at the time fixed for performance, either alternative might prove the more desirable) the contract will be enforced according to its terms."

We do not think the contract under consideration is an alternative contract. The convenants contained in the first three paragraphs of the contract and the covenant contained in paragraph 6 where defendants agree to indemnify plaintiff in the event of the breach of any of the agreements or covenants listed, are not alternative. The covenant to indemnify is merely the agreed consequence of a breach of any of the other covenants contained in the contract. A breach of one of the listed covenants is necessary to give effect to the indemnity covenant. There is no option other than which arises from a determination to suffer the consequences of a breach.

We think that paragraph 6 which provides for indemnity is a penalty provision and is unenforceable. The contract contained several covenants of different degrees of importance, and yet the indemnity provision provided that a breach of any of the covenants or agreements would obligate defendants to indemnify plaintiff for all losses sustained as a result of having provided the bonds. We do not think that the obligation to indemnify plaintiff for all losses sustained was a reasonable forecast of just compensation for the harm that would result from a breach of the various covenants and agreements.

The judgment of the trial court is affirmed.