Homer R. MAYHALL et ux., d/b/a Beltone Hearing Aid Service H. R. "Tex" Mayhall Company, Appellants,

v.

Paul PROSKOWETZ, Individually and d/b/a Centex Hearing Aid Service, Inc., Appellee.

No. 12405.

Court of Civil Appeals of Texas, Austin.

May 12, 1976.

Rehearing Denied June 1, 1976.

Milton L. Bankston, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellants.

Malcolm Robinson, Hooper & Robinson, Austin, for appellee.

SHANNON, Justice.

Appellants[1] filed suit in the district court of Travis County against appellee, Paul Proskowetz, for breach of an employment agreement. After appellants had rested their case, appellee moved the court to instruct the jury to return a verdict for him upon the basis that the provision in the employment agreement, which provided for "liquidated damages," was a penalty. The court granted the motion, and entered judgment that appellants take nothing. We will reverse that judgment.

Appellants have operated their hearing aid business in Austin for twenty-two years. That business functions under a franchise from Beltone Hearing Aid Company and the franchise covers twenty-two counties in central and southeast Texas.[2]

The primary object of appellants' business is the sale and service of hearing aid devices. As a part of sales promotion, appellants work with public schools, physicians, and nurses in conducting tests to determine whether those persons who are tested suffer a loss of hearing. To carry out these objectives, it is necessary for appellants to conduct programs to train their employees to administer hearing tests and to interpret the results of the tests. Appellants also train their employees to repair the hearing devices.

Prior to employment by appellants, appellee was associated with a Beltone dealer in Baton Rouge. In March of 1972, appellee commenced negotiations with appellants for a job. As one of the conditions of employment, appellants require the execution of an employment contract, termed by them a "working agreement." One part of that agreement provides that the employee after terminating employment will not compete with appellants in a specified location for three years. In the preliminary negotiations appellants told appellee of the non-competition provision.

In May of 1972, appellee moved to Austin. Upon arrival he completed a formal application for employment with appellants. As appellee had no license to engage in the hearing aid business in Texas, he made application to obtain a temporary training permit and appellant, Margarette Mayhall, agreed to sponsor appellee as his supervisor. Appellee was presented with a form employment agreement which he signed. The form of that agreement provided as follows:

### "WORKING AGREEMENT

"Whereas, I ___ have applied for employment with the H. R. "Tex" Mayhall Company and whereas such employment shall require said company to train me in the art of selling, fitting, and servicing hearing aid equipment, and such employer shall necessarily furnish to me prospective customers. Now, therefore, I, ___, in consideration of the above mentioned items and of the premises generally hereby agree that I will not work for, sell for, demonstrate for, nor assist any other hearing aid company, distributor, or person in the following counties of Texas to wit: Austin, Bastrop, Blanco, Burnet, Caldwell, Colorado, DeWitt, Fayette, Gonzales, Hays, Lampasas, Lavaca, Lee, Llano, Mason, Milam, Travis, Washington and Williamson, whether as a consultant or distributor for a period of three years beginning at termination of my employment and ending three years from that date.

"In the event that I, ___, fail to comply with the terms thereof, I agree to pay Homer R. Mayhall the sume [sic] of five thousand dollars ($5,000.00) as liquidated damages because of the difficulty of proving damages arising out of breach hereof, and the parties agree such amount will be fair and equitable for a breach hereof.

"This is a bona fide legal agreement, and I hereby recognize it as such."

1. Homer R. Mayhall and wife, Margarette Mayhall, doing business as Beltone Hearing Aid Service H. R. "Tex" Mayhall Company.

2. Austin, Bastrop, Blanco, Brazos, Burleson, Burnet, Caldwell, Colorado, Fayette, Grimes, Hays, Lampasas, Lavaca, Lee, Llano, Madison, Milam, Polk, Travis, Waller, Washington, and Williamson.

Appellee began employment with appellants on May 18, 1972. He was compensated on a commission basis. While working for appellants, appellee made between $1,100.00 and $1,300.00 each month except for June and July of 1973 when he made about $800.00 each month.

Appellants furnished appellee a sample kit of instruments, servicing tools, books containing names and addresses of "users" and "leads," test records of clientele, equipment, training materials, and a "protected" territory in which to work. The "protected" territory consisted of ten counties in which he was the only Beltone salesman. In the other twelve counties in appellants' franchise, appellee was advised of the "service centers" which appellants had developed through the years.

In November or December of 1972, appellee decided that he would quit, but he did not terminate his employment with appellants until August 6, 1973.

It was shown that during a part of June and in July of 1973, while still working for appellants, appellee began selling hearing devices for another hearing aid company, Otican Corporation.

When he left appellants' employ, appellee told appellants that he was going into business for himself. At trial, it was shown that appellee was in the hearing aid business in Travis, Williamson, Caldwell, Fayette, and Lee Counties. Appellee testified that he "openly and actively" went into competition with appellants for business in those counties. Appellee has sold some hearing devices to persons who were formerly appellants' clients.

Appellant, Margarette Mayhall, testified that she did not know how many of appellants' customers appellee had called upon and had succeeded in selling hearing aids to. She professed that there was no way to determine, with particularity, the financial loss to her business caused by appellee's activities. She was also unaware of how many prospective customers appellee had called upon for his own purposes and how many Otican hearing devices appellee had sold while working for appellants.

Appellant Mayhall testified further as to the difficulty in ascertaining the monetary damage to appellants occasioned by appellee's departure. Appellee admitted that there was no way to determine the number of sales lost by appellants which was occasioned by his leaving appellants' employ.

On cross-examination, Margarette Mayhall stated that she and her husband and appellee did not discuss the stipulated damage provision of the agreement. Appellant Mayhall also testified on cross-examination, that if appellee had left appellants' employment and had begun his own business in one or two of the counties covered by the agreement that, in her opinion, appellee "would have broken the agreement." She said that her view would be the same even if appellee had worked for appellants for even a short period of time.

By two points of error appellants contend that the district court erred in instructing the verdict because the stipulated damage provision of the agreement was a provision for liquidated damages and thereby enforceable.

■■ A stipulated damage provision of a contract will be enforced as liquidated damages when the damages caused by the breach are uncertain and the stipulated sum is reasonable. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484 (1952). Where the contract contains several provisions of different importance and the stipulated damage sum is payable for the breach of even the least important provision, the stipulated damage provision is usually regarded as a penalty. *Durst v. Swift,* 11 Tex. 273 (1854).

■ The employment agreement did not contain several provisions of varying importance, the breach of the least important of which required the payment of the stipulated damages. The payment of the stipulated damage provision in the agreement was conditioned upon appellee's leaving appellants' employ and then commencing to ". . . work for, sell for, demonstrate for, nor assist any other hearing aid company, distributor, or person . . ." in the

"protected" counties for a period of three years after termination with appellants.

We have also concluded that the damages caused from breach of the working agreement were uncertain and that the stipulated sum was reasonable. All of the evidence was that there was no way to measure the financial loss to appellants' business upon the termination of an employee of appellee's category. The statement of facts shows that appellants trained appellee, and gave him their books containing the names and addresses of clients and prospective clients, their clients' test records, equipment, and training materials. Appellee, working on a commission was able to earn from $1,100.00 to $1,300.00 each month. About seven months after employment appellee formed the resolve to leave appellants, but continued in their employ for another eight months. During a part of that period of time appellee was selling appellants' products and at the same time he was building up his own business with another competing line of products.

It is true that appellant Mayhall testified on cross-examination concerning her attitude toward the enforcement of the agreement under a different set of facts. Appellant Mayhall's view toward the application of the agreement to a different set of facts has little bearing on the resolution of this case. The facts are that appellee set up his own business in five of the counties covered by the agreement after he had worked for appellants more than one year.

The judgment is reversed and the cause is remanded to the district court.

Reversed and Remanded.