In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3313

JANA CAUDILL, *et al.*,

*Plaintiffs-Appellants*,

*v.*

KELLER WILLIAMS REALTY, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 4693 — **Charles P. Kocoras**, *Judge*.

ARGUED MAY 19, 2016 — DECIDED JULY 6, 2016

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. Jana Caudill, the principal plaintiff in this diversity suit for breach of contract governed by Texas law, is an Indiana resident who owns a real estate brokerage company named Leaders. The defendant, Keller Williams, is a Texas corporation that franchises real estate firms like the plaintiffs' and in 2001 had franchised Caudill's company, with the result that it operated under the Keller Wil-

liams name. Later she was made a Regional Director of Keller Williams. Their relationship soured, however. Her position was terminated in 2010 and her company's franchise the following year.

Her suit, filed in a federal district court in Indiana, was transferred to a federal district court in Texas and settled in 2012. The settlement agreement included a prohibition against disclosure of its terms, including the amount paid Caudill in the settlement. The agreement allowed certain entities, such as tax professionals, insurance carriers, and government agencies, to receive the disclosures, but the recipients had to promise to keep them in confidence. The agreement contained a liquidated damages provision which stated that because damages for violations of the prohibition against disclosure of a settlement term "are not susceptible to precise quantification," any such violation would entitle the victim (in this case Caudill) to damages of $10,000.

Three months after the court in Texas dismissed Caudill's suit pursuant to the settlement agreement, Keller Williams issued what is called an FDD (Franchise Disclosure Document) to some 2000 existing or potential franchisees and other interested firms or persons. None of the recipients was permitted by the settlement agreement to receive such disclosures. And the FDD failed to require recipients to keep the disclosed information confidential. In violation of the settlement agreement the FDD described Caudill's lawsuit against Keller Williams in detail—it had alleged a variety of violations of tort and contract law and of state statutes—and noted that the case had been dismissed after the parties had settled. The FDD also disclosed both the total amount paid by the defendants to Caudill and her company and the share

of the settlement that Keller Williams' insurer had contributed.

The Federal Trade Commission requires the FDD to be sent to "a prospective franchisee … 14 calendar-days before the prospective franchisee signs a binding agreement with, or makes any payment to, the franchisor or an affiliate in connection with the proposed franchise sale," 16 C.F.R. § 436.2(a); see also *id.* § 436.5(c) (the FDD must also include information about past litigation). But so far as appears Keller Williams sent the FDD not only to on-the-verge-of-becoming-franchisees of Keller Williams, as required by the regulations, but also to other potential franchisees, including renewing franchisees (who are not generally entitled to such disclosures under the regulations, *id.* § 436.1(t)), Keller Williams employees, and regional owners (not defined).

Caudill contends that this widespread dissemination of the FDD was a violation of the confidentiality clause of the settlement agreement, and that since the liquidated damages clause specifies damages of $10,000 for each breach of the confidentiality clause she is entitled to $20 million (2000 x $10,000) in damages. The district judge disagreed, noting that under Texas law a liquidated damages clause is enforceable only if "the harm caused by the breach [of the contract] is incapable or difficult of estimation *and* … the amount of liquidated damages [specified in the contract] is a reasonable forecast of just compensation." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991) (emphasis added).

The relevance of the second requirement lies in the twin facts that Caudill's suit is for breach of contract and that penalty clauses in contracts are (and long have been, see, e.g., *Durst v. Swift*, 11 Tex. 273, 281–82 (1854)) unenforceable

under Texas law, as under common law generally. "The basic principle underlying contract damages is compensation for losses sustained and no more; thus, we will not enforce punitive contractual damages provisions." *FPL Energy, LLC v. TXU Portfolio Management Co., L.P.*, 426 S.W.3d 59, 69 (Tex. 2014). Or as we explained in *Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1289–90 (7th Cir. 1985) (applying Illinois law), "a liquidation of damages must be a reasonable estimate at the time of contracting of the likely damages from breach, and the need for estimation at that time must be shown by reference to the likely difficulty of measuring the actual damages from a breach of contract after the breach occurs. If damages would be easy to determine then, or if the estimate greatly exceeds a reasonable upper estimate of what the damages are likely to be, it is a penalty." And though the reasonableness of a liquidated damages provision is ordinarily its reasonableness at the time of contracting, "when there is an unbridgeable discrepancy between liquidated damages provisions as written and the unfortunate reality in application, we cannot enforce such provisions." *FPL Energy, LLC v. TXU Portfolio Management Co., L.P.*, *supra*, 426 S.W.3d at 72.

The district judge thought it unreasonable to suppose, at least in the absence of evidence—and there was virtually none—that the dissemination of the FDD beyond the limits specified in the settlement agreement had caused a $20 million loss to Caudill. Although the burden of proving that a liquidated damages clause is actually a penalty clause is on the defendant in an action to enforce the clause, *id.*, Keller Williams was able to show that there was no basis for supposing the damage to have been anywhere near an average of $10,000 per unauthorized recipient of the disclosure. Cau-

dill failed to identify a single recipient who had come to think less of her or her company as a result of it, or a single referral that she had lost—failures of proof that demolished her claim to $20 million in damages. And, though this was icing on the cake, Keller Williams presented evidence that any fluctuations in Caudill's annual profits could be best explained by factors other than disclosure, such as the termination of her business relationship with Keller Williams.

The judge concluded that "actual damages do not exist," and even if that's something of an exaggeration Keller Williams had succeeded in showing that "the actual loss [suffered by Caudill] was not an approximation of the stipulated [in the settlement agreement] sum." *Healix Infusion Therapy, Inc. v. Bellos*, No., 11–02–00346–CV, 2003 WL 22411873, at *2 (Tex. App. Oct. 23, 2003).

One can, it is true, *imagine* Caudill's business being seriously harmed by the disclosure of the terms of settlement. The disclosure alleged a frightening catalog of wrongs committed by Keller Williams, including "breach of contract, fraudulent misrepresentation to induce a contract, tortious interference with contract, promissory estoppel, unjust enrichment, fraudulent misrepresentation to induce a written contract, breach of a written contract, tortious interference with a written contract, … violation of [the] Illinois Wage Payment and Collection Act, breach of the franchise agreement, and violation of the Indiana Deceptive Franchise Practices Act." Reading this litany of alleged wrongs might indeed scare off prospective business partners and clients, fearing to become targets of Caudill should they enter into a business relationship with her and the relationship sour. But this is speculation.

The facts also scotch Caudill's alternative request for a permanent injunction against further disclosure by Keller Williams of the terms of the settlement agreement. Should Keller Williams violate the confidentiality provision of the settlement agreement by making a disclosure not required by state or federal law, and measurable harm to Caudill result, she will be free to seek further relief, whether monetary or injunctive.

AFFIRMED