John Donovan, Justice *309 Appellants Atrium Medical Center, L.P., and Texas Healthcare Alliance, LLC, appeal a judgment in favor of appellee Houston Red C LLC d/b/a ImageFirst Healthcare Laundry Specialists, finding that appellants breached a laundry service agreement and are jointly and severally liable for damages, costs, interest and attorney's fees. Following a bench trial, the trial court entered amended findings of fact and conclusions of law supporting the judgment for appellee. In four issues on appeal, appellants assert the trial court erred in finding breach of contract, enforcing a liquidated damages clause, applying prejudgment interest, and granting an unsegregated, contested attorney's fee application. We affirm in part and reverse and remand in part.
I. Background
Atrium owns and operates a sixty-bed, long-term acute care hospital in Stafford, Texas. THA is the general partner, part owner, and day-to-day manager of Atrium. ImageFirst is a rental and laundry service company.
In November 2012, Atrium and appellee executed a five-year (260 week) laundry services agreement. The contract provides, in relevant part, the following:
The length of this agreement is for sixty (60) months from the date of the first delivery and therefore for the same time period unless cancelled by either party, in writing, at least ninety (90) days prior to any termination date. The terms of this contract shall apply to all subsequent increases or additions to such service. There will be a minimum weekly billing of 60% of this agreement value or 60% of the current invoice amount, whichever is greater. Customer may discontinue service at any time provided customer pay Company a cancellation charge of 40% of the agreement value or the current invoice amount, whichever is greater, multiplied by the number of weeks remaining under this agreement. The customer agrees that this cancellation charge is not punitive, but a reimbursement to Company for related investments to service the customer. Customer agrees to pay attorneys fees and cost necessary to collect monies due. The price in effect may be changed annually. A finance charge of 1½% per month, which is equal to 18% per year will be added to all balances not paid within terms of Net 10 EOM. If credit terms are allowed, customer agrees to pay balance due to Company within ten (10) days after the end of the month that said invoices are dated.
In 2013, Atrium was in financial crisis, stemming from an alleged abuse of power, fraud, and embezzlement by Sohail Siddiqui, M.D., the former manager of THA. In April 2013, Atrium failed to pay appellee's invoices. Appellee continued to deliver linens without payment for several months.
Atrium's new chief executive officer, Ahmad Zaid, testified that he tried to work out a payment plan with appellee to ensure no interruption in the delivery of linens to the hospital; however, appellee responded that it would no longer deliver linens without a payment towards Atrium's past due balance. Appellee continued to deliver linens uninterrupted.
On or about September 11, 2013, Zaid allegedly verbally informed appellee that it would no longer use appellee's linens or services, exercising the cancellation provision of the contract. The last day appellee delivered linens to Atrium was on September 2, 2013. Appellee's last invoice to Atrium was on September 6, 2013, for *310 $8,066.79. At the time Atrium's CEO verbally cancelled the contract, 9 months/38-weeks had elapsed under the 60-month/260 week contract, and Atrium had not paid $165,587.33 of the total charges invoiced by appellee.
In November 2013, appellee filed a petition in intervention in appellants' pending lawsuit against Siddiqui in the 190th Judicial District Court of Harris County. In its second amended petition in intervention, appellee asserted claims against appellants, Siddiqui, and several other individual owners[1] for breach of contract, quantum meruit, conversion, suit on sworn account, unjust enrichment, and money had and received. Appellee claimed more than $1 million dollars in damages. After nonsuiting the individual defendants, a bench trial between Atrium, THA, and ImageFirst was held in February 2016.
In March 2016, the trial court awarded a final judgment in favor of appellee on its breach of contract claim, finding Atrium and THA were jointly and severally liable for breach of contract and damages. The court determined that appellee was entitled to damages under the terms of the contract, including the liquidated damages provision which the trial court found was not a penalty. The trial court found appellee suffered actual damages "for those amounts due and owing as of September 2013 and for damages calculated under the liquidated damages provision." The trial court awarded the following damages:
• Actual damages: $881,918.28
• Contractual pre-judgment interest: $375,021.20
• Attorney's fees (trial): $110,000.00
• Attorney's fees (appellate): $70,000.00
Total: $1,436,939.48
The trial court further found that appellee was entitled to recover from appellants post-judgment interest accruing at 5% simple interest and all costs of court.
On June 3, 2016, the trial court entered amended findings of fact and conclusions of law in support of the judgment.
II. ISSUES AND STANDARDS OF REVIEW
A. Issues
Appellants challenge the trial court's judgment, claiming in their first issue that the record does not contain legally or factually sufficient evidence to support a finding that appellee should prevail on its breach of contract claim. Alternatively, appellants contend in its second issue, with multiple subparts, that we should reverse and reform the judgment by denying appellee recovery under the contract's liquidated damages clause. In their third issue, appellants maintain that we should reverse and modify the judgment by limiting the contractual prejudgment interest solely to amounts actually invoiced by appellee. Finally, appellants argue in their fourth issue that we should reverse and modify the judgment by reducing the attorney's fees award to account for fees required to be segregated.
B. Standard or review
Because this was a bench trial, the trial judge issued findings of fact and conclusions of law. We review the trial court's conclusions of law de novo. BMC Software Belgium, N.V. v. Marchand , 83 S.W.3d 789, 794 (Tex. 2002) ; Johnston v. McKinney , 9 S.W.3d 271, 277 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). Incorrect conclusions of law will not require a reversal if the controlling facts support a correct legal theory. Id. The *311 findings of fact in a bench trial have the same force and dignity as a jury verdict, and we review them for legal and factual sufficiency of the evidence under the same standards we apply in reviewing a jury's findings. West v. Triple B. Servs., LLP , 264 S.W.3d 440, 445 (Tex. App.-Houston [14th Dist.] 2008, no pet.) (citing Ortiz v. Jones , 917 S.W.2d 770, 772 (Tex. 1996) ).
When conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. City of Keller v. Wilson , 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. See id. at 827. We must determine whether the evidence at trial would enable a reasonable and fair-minded factfinder to find the facts at issue. See ids="8943104" index="7" url="https://cite.case.law/sw3d/168/802/#p823">id. The factfinder is the only judge of witness credibility and the weight to give to testimony. See itation case-ids="8943104" index="8" url="https://cite.case.law/sw3d/168/802/#p823">id. at 819. Because findings of fact in a bench trial have the same force and dignity as a jury verdict, we review them for legal sufficiency of the evidence under the same standards we apply in reviewing the jury's findings. See Anderson v. City of Seven Points , 806 S.W.2d 791, 794 (Tex. 1991).
When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Pool v. Ford Motor Co. , 715 S.W.2d 629, 635 (Tex. 1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. GTE Mobilnet of S. Tex. v. Pascouet , 61 S.W.3d 599, 615-16 (Tex. App.-Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. Maritime Overseas Corp. v. Ellis , 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. Pascouet , 61 S.W.3d at 616.
III. ANALYSIS
A. Breach of Contract
In issue one, appellants request we reverse and render a take-nothing judgment, arguing that appellee breached the service agreement before Atrium by overcharging Atrium for the quantities of linens delivered from February 2013, and thereafter. Appellants argue that Atrium did not start falling behind on its payments until April 2013. Appellants contend that appellee's breaches occurred first and were material, and thus, Atrium was discharged of its obligations to further perform under the contract. According to appellants, appellee cannot prevail for breach of contract as a matter of law.
To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. West v. Triple B Servs., LLP , 264 S.W.3d 440, 446 (Tex. App.-Houston [14th Dist.] 2008, no pet.) A breach occurs when a party fails or refuses to do something he has promised to do. Id. (citing *312 Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc. , 826 S.W.2d 638, 640 (Tex. App.-Houston [14th Dist.] 1992, no writ) ). When one party to a contract commits a material breach of that contract, the other party is excused from further performance under the contract. See ids="9981151" index="18" url="https://cite.case.law/sw2d/826/638/#p640">id. (citing Hernandez v. Gulf Group Lloyds , 875 S.W.2d 691, 692 (Tex. 1994) ).
The trial court did not err in finding that appellants are liable for breach of contract. In amended findings of fact and conclusions of law, the trial court found appellee had established a valid contract; that "ImageFirst fully performed its obligations under the Contract;" that verbal and premature cancellation was "a material breach of contract," and that appellee sustained damages as a result of Atrium's breach. The evidence of record supports the trial court's findings. The trial testimony revealed that both parties performed initially as contemplated by the contract-appellee picked-up and delivered linens to Atrium three times a week, providing Atrium with 120% of the inventory they requested, and only billing Atrium for 100%. Due to growing needs by Atrium, however, Atrium required a more frequent delivery and pick-up schedule, e.g. , every other day. Eventually, Atrium required appellee to pick-up and delivery every single day. Due to the increased schedule, the parties, by agreement, eliminated the "free" 20% of linen. Atrium accepted the increased services and paid invoices that included the adjusted fee through mid-April 2013. Appellants did not plead as an affirmative defense "prior material breach," and the trial court denied appellants' post-trial motion for leave to file an amended answer. Under these circumstances, appellants contention that appellee did not perform under the contract has no merit. The evidence of record is sufficient to support the trial court's findings; thus, appellants' first issue is overruled.
B. Liquidated Damages
In their second issue, appellants argue, alternatively, appellee should not recover for liquidated damages.
1. Appellants' material breach triggered liquidated damages clause
Appellants assert the record does not contain legally or factually sufficient evidence to support the liquidated damages clause was triggered. Further, appellants contend that appellee's repudiation of the contract bars enforcement of the liquidated damages clause.
In its findings of fact and conclusions of law, the trial court found that after Atrium already owed appellee over $165,587.33, appellants materially breached and triggered the liquidated damages clause as follows:
33. By failing to pay ImageFirst for the laundry services that ImageFirst provided from April 2013 through September 2013, Atrium committed a material breach of the Contract.
34. By verbally and prematurely canceling the Contract without any written notice as the Contract requires, Atrium committed a material breach of the Contract, entitling ImageFirst to the amounts provided in the Liquidated Damages Clause.
38. As a result of Atrium's breach of canceling the Contract with 51-months/222-weeks remaining under the Contract, ImageFirst is entitled to recover under the Contract's Liquidated Damages Provision. ImageFirst's last invoice of $8,066.79 to Atrium is greater than the original Contract amount of $2,616.66. Therefore, ImageFirst is entitled to recover 40% of the last invoice, multiplied by the 222-weeks remaining under the Contract, totaling $716,330.95.
*313 As set forth above, supra at III.A., the trial court determined appellee "fully performed its obligations under the Contract."
The trial court further found that appellee "did not repudiate the Contract." The evidence demonstrated that Atrium stopped making payments to appellee in mid-April 2013; nevertheless, appellee continued services to Atrium until September 2013, when Atrium's CEO verbally terminated the contract. As such, the trial court's finding that appellee was entitled to amounts provided in the liquidated damages clause is supported by sufficient evidence.
2. Liquidated damages provision provides reasonable forecast of appellee's expectation damages
Appellants maintain that even if the liquidated damages clause is triggered it should be governed by the parties' agreement to establish reliance damages, claiming the liquidated damages clause serves as a reimbursement to appellee for related investments to service Atrium. Appellants also claim the reasonableness of the liquidated damages clause should be evaluated by comparison to appellee's reliance damages.
In its findings of fact and conclusions of law, the trial court made findings regarding damages as follows:
6. At the time the parties entered into the Contract, the damages ImageFirst would suffer if Atrium breached the Contract were incapable or difficult of estimation at the time the parties signed the Contract because:
a. The parties knew that the volume of the laundry services would fluctuate over time as the census changed and given the needs of the individual patients;
b. The parties could not predict how long linens would last, so ImageFirst's costs could not be determined;
c. The parties could not determine the frequency of deliveries that would be required to service Atrium's account, so ImageFirst's costs could not be determined;
d. The parties could not determine Atrium's rate of loss of ImageFirst's linens, so ImageFirst's costs could not be determined;
e. The parties could not determine the amount ImageFirst's general overhead expenses and resources would be expended to service Atrium's account, so ImageFirst's costs could not be determined.
7. Because ImageFirst's damages in the event of Atrium's breach could not be calculated or estimated at the time the Contract was signed, the Contract provided that if Atrium prematurely canceled the Contract, Atrium would pay ImageFirst "40% of the agreement value or the current invoice amount, whichever is greater, multiplied by the number of weeks remaining under the agreement" (the "Liquidated Damages Provision").
8. ImageFirst arrived at the 40% number in the Liquidated Damages Provision because it was a conservative historical estimate of the net profits, and a reasonable rate of return on the infrastructure investments, over the life of laundry service agreements similar to the Contract.
9. Considering the average revenue ImageFirst receives for the weekly rental of its linens during the linens' lifespan, the average customer's rate of loss and ImageFirst's overhead expenses throughout the performance of a contract like the Contract with Atrium, "40% of the agreement values of the *314 current invoice amount, whichever is greater" is a reasonable forecast of ImageFirst's just compensation under the Contract.
10. The Liquidated Damages Provision is a reasonable forecast of ImageFirst's just compensation over the life of the Contract even though the Liquidated Damages Provision's damages calculation is based only on the most recent one-week invoice as of the date of cancellation instead of being based on an average of all weekly invoices under the Contract through the date of cancellation or even a larger sample size of invoices issued under the Contract.
11. At the time the parties entered into the Contract, ImageFirst had access to damages data and information compiled by ImageFirst's franchisor based on information gathered by all franchisees over an extended period of time. But access to this data and information was not sufficient as of the effective date of the Contract to estimate ImageFirst's damages in the event of breach.
The evidence of record demonstrated that the 40% cancellation charge was a reasonable estimate of appellee's lost profits over the life of the contract. Appellants' interpretation of the cancellation charge, contemplating only reimbursement for appellee's investments, is an attempt to change the cancellation charge into a limitation of liability provision. See Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc. , 997 S.W.2d 803, 810 (Tex. App.-Dallas 1999, no pet.) ("a contractual provision setting an upper limit to the amount recoverable is considered a limitation of liability provision."). Here, the trial court correctly rejected this contention as the cancellation charge has no upper limit and is specifically tied to the 40% of the last invoice over the remaining term.
3. Cancellation charge is enforceable and calls for just compensation
Moreover, appellants contend that even if the parties had agreed to estimate expectation damages, the liquidated damages clause is unenforceable because its formula does not offer a reasonable forecast. Appellants argue that appellee's expectation damages were not incapable or difficult to estimate. Appellants also assert that enforcing the liquidated damages clause would act as an unenforceable penalty.
In FPL Energy, LLC v. TXU Portfolio Mgmt. Co., LP , the Texas Supreme Court discussed the enforceability of liquidated damages:
The basic principle underlying contract damages is compensation for losses sustained and no more; thus, we will not enforce punitive contractual damages provisions. See Stewart v. Basey , 150 Tex. 666, 245 S.W.2d 484, 486 (1952). In Phillips v. Phillips , we acknowledged this principle and restated the two indispensable findings a court must make to enforce contractual damages provisions: (1) "the harm caused by the breach is incapable or difficult of estimation," and (2) "the amount of liquidated damages called for is a reasonable forecast of just compensation." 820 S.W.2d 785, 788 (Tex. 1991) (citing Rio Grande Valley Sugar Growers, Inc. v. Campesi , 592 S.W.2d 340, 342 n. 2 (Tex. 1979) ). We evaluate both prongs of this test from the perspective of the parties at the time of contracting.
426 S.W.3d 59, 69-70 (Tex. 2014). "While the question may require a court to resolve certain factual issues first, ultimately the enforceability of a liquidated damages provision presents a question of law for the court to decide." Id. , at 70. The party asserting that a liquidated-damages clause is a penalty provision bears the burden of *315 pleading and proof. Garden Ridge, LP v. Advance Intern., Inc. , 403 S.W.3d 432, 437-38 (Tex. App.-Houston [14th Dist.] 2013, pet. denied) (citing Phillips , 820 S.W.2d at 789 ; Tex. R. Civ. P. 94 ).
In this case, the trial court analyzed both Phillips prongs, finding difficulty in estimating damages and the reasonableness of damage forecast. See Phillips v. Phillips , 820 S.W.2d 785, 788 (Tex. 1991). In its findings of fact and conclusions of law, the trial court observed that at the time the parties entered into the contract, the damages appellee would suffer if Atrium breached the contract were incapable or difficult of estimation because: (a) the parties knew the volume of laundry services would fluctuate over time as the census changed and given the needs of individual patients; (b) the parties could not predict how long linens would last; (c) the parties could not determine the frequency of deliveries that would be required to service Atrium's account; (d) the parties could not determine Atrium's rate of loss of appellee's linens; and (e) the parties could not determine the amount of appellee's general overhead expenses and resources that would be expended to service Atrium's account. Thus, the trial court correctly found appellee's costs could not be determined.
Additionally, the trial court found that because appellee's damages could not be calculated at the time the contract was signed, the contract provided that if Atrium prematurely canceled the contract, Atrium would pay appellee "40% of the agreement value or the current invoice amount, whichever is greater, multiplied by the number of weeks remaining under the agreement." As set forth in the trial court's findings of fact and conclusions of law, appellee derived 40% because it was a conservative historical estimate of the net profits, and a reasonable rate of return on infrastructure investments, over the life of laundry service agreements similar to the contract.
The trial court further found that appellee arrived at the 40% number because it was a conservative historical estimate of the net profits, and a reasonable rate of return on the infrastructure investments, over the life of laundry service agreements similar to the contract between Atrium and appellee. On this basis, the trial court found that the provision is a reasonable forecast of appellee's just compensation over the life of the contract even though the provision's damages calculation is based only on the most recent one-week invoice as of the date of cancellation instead of being based on an average of all weekly invoices under the contract through the date of cancellation or even a larger sample size invoices issued under the contract.
In its conclusions of law, the trial court determined: the contract is valid and enforceable; the contract is not illusory; and based on the clear and unambiguous language of the contract, the parties' intent at the time of formation was for the liquidated damages provision to serve as a reasonable forecast of appellee's expectation damages in the event of breach, not as a reasonable forecast of appellee's reliance damages in the event of breach. It further determined that the liquidated damages provision was not a penalty. The liquidated damages provision is enforceable because at the time the contract was signed, damages resulting from material breach were very difficult, if not impossible to determine, and the amount of damages was a reasonable estimate of the harm that would be incurred. See Murphy v. Cintas Corp. , 923 S.W.2d 663, 666 (Tex. App.-Tyler 1996, writ denied) (upholding liquidated damages provision for 50% of the weekly fees for the remainder of the 60-month *316 term, noting "[t]o forecast the actual damages to Cintas as a result of Murphy's termination of the contract sixty months in advance would be fraught with uncertainty."); Oetting v. Flake Uniform & Linen Serv., Inc. , 553 S.W.2d 793, 797-98 (Tex. Civ. App.-Fort Worth 1977, no writ) (focusing on anticipated profit margin, court held that 85% cancellation charge reasonable). Here, the evidence of record demonstrated 40% was a reasonable forecast.
Appellants failed to prove the liquidated damages provision is an unenforceable penalty. Garden Ridge, LP , 403 S.W.3d at 437-38. For the above reasons, appellants' second issue is overruled.
C. Pre-judgment Interest
In their third issue, appellants maintain the court should reverse and modify the judgment by limiting the contractual prejudgment interest solely to amounts actually invoiced by ImageFirst. Appellants maintain that contractual finance charges are limited to "past-due invoices issued by ImageFirst." Thus, appellants argue that appellee is not entitled to recover the finance charge on liquidated damages that were never invoiced.
In its finding of fact and conclusions of law, the trial court found that pursuant to the contract's finance charge provision, the $716,330.95 appellee is entitled to under the liquidated damages provision has been accruing interest at 1½% per month or 18% per year from October 12, 2013, to February 16, 2016. Contrary to appellants' contention, the contract expressly provides for contractual interest on the cancellation of the contract. "A finance charge of 1½% per month, which is equal to 18% per year will be added to all balances not paid within terms of Net 10 EOM."
The terms of the contract do not require amounts to be invoiced to become due or to incur the contractual finance charge. Here, the latest date of the termination and cancellation charge became due was September 11, 2013. Under the contract, if the cancellation charge was not paid by October 10, it accrued interest of 1½% per month. As such, the evidence of record is sufficient to support the trial court's findings. Thus, appellants' third issue is overruled.
D. Attorney's Fees
In their fourth issue, appellants assert the court should reverse and modify the judgment by reducing the attorney's fees award to account for fees required to be segregated.[2]
In support of an application for $110,000 in attorney's fees, H. Ronald Welsh, counsel for appellee submitted an affidavit and fourteen pages of Welsh LeBlanc LLP's billing report. In Welsh's affidavit, he maintains that a ten percent (10%) reduction of fees properly and fully segregates the fees incurred for the quantum meruit and conversion causes of action from those fees incurred from breach of contract.
Atrium opposed the fee application and submitted a controverting attorney's fees declaration by Helen Patel, directly addressing the segregation issue and establishing $11,473.50 should be excluded from recovery because it relates to time entries in pursuit of appellee's claims against individual defendants. Patel criticizes Welsh's "10% reduction of attorney's fees" because it does not take into account the significant *317 amount of time appellee's counsel spent solely on Siddiqui litigation (e.g. , attended depositions of individuals with no knowledge or connection to appellee's claims against appellants and played no part in this lawsuit's trial; reviewed motions and correspondence and attended hearings on issues having no bearing on appellee's claims against appellants; propounded discovery on the individual defendants and conducted follow-up work on that discovery; opposed for a substantial period of time appellants' attempts to sever appellee's claims from the Siddiqui litigation; engaged in correspondence with counsel for the individual defendants; and prepared dismissal document for the individual defendants). Patel's affidavit is unrebutted evidence.
We review a trial court's award of attorney's fees under an abuse of discretion standard. See Ridge Oil Co., Inc. v. Guinn Invs., Inc. , 148 S.W.3d 143, 163 (Tex. 2004). A party may not recover attorney's fees unless authorized by statute or contract. Tony Gullo Motors I, L.P. v. Chapa , 212 S.W.3d 299, 310-11 (Tex. 2006). Texas Civil Practice and Remedies Code section 38.001(8) provides for the recovery of attorney's fees in a suit on a contract. To recover attorney's fees under section 38.001, a party must prevail on the underlying claim and recover damages. Intercontinental Grp. P'ship v. KB Home Lone Star L.P. , 295 S.W.3d 650, 653 (Tex. 2009). Under section 38.001, the trial court has no discretion to deny attorney's fees when presented with evidence of the same. Bocquet v. Herring , 972 S.W.2d 19, 20 (Tex. 1998). Notwithstanding, a party seeking attorney's fees must segregate based on claims and parties. See Chapa , 212 S.W.3d at 313-14. Determinations addressing the need to segregate attorney's fees is a question of law. CA Partners v. Spears , 274 S.W.3d 51, 81 (Tex. App.-Houston [14th Dist.] 2008, pet. denied.).
Here, appellee prevailed on its breach of contract claim and recovered damages for that claim; thus, appellee is entitled to recover some amount of attorney's fees under Chapter 38. See KB Home , 295 S.W.3d at 653. The trial court's findings of fact and conclusions of law do not discuss fee segregation. Instead, without any explanation, the trial court awarded the full measure of appellee's attorney's fees, $110,000. This was an error and, as stated in Chapa "an unsegregated damages award require[s] a remand." 212 S.W.3d at 314. As such, appellants' fourth issue is sustained.
IV. CONCLUSION
Appellants' issues one, two, and three are overruled. Appellants' issue four is sustained. Thus, the trial court's judgment is affirmed in part, reversed in part, and remanded for reconsideration of attorney's fees.
( Frost, C.J., concurring).
CONCURRING OPINION
Kem Thompson Frost, Chief Justice
The majority rejects the appellants' main argument under their first issue based on a conclusion that the parties deleted an obligation in their agreement by means of an oral modification. The better course would be to conclude that the agreement never imposed the obligation in question, so there was no need to modify the agreement.
No Merit in the Appellants' First Issue
In their first issue, appellants Atrium Medical Center, LP and Texas Healthcare Alliance, LLC (collectively the "Atrium Parties") assert that appellee Houston Red C LLC d/b/a ImageFIRST Healthcare *318 Laundry Specialists ("ImageFIRST") cannot recover on its breach-of-contract claim as a matter of law because the undisputed trial evidence shows that before Atrium Medical Center, LP breached its November 2012 agreement with ImageFIRST (the "Agreement"), ImageFIRST breached the Agreement by failing to provide a particular service. The service that the Agreement allegedly required was ImageFIRST's giving Atrium access to 120% of the amount of linens invoiced to Atrium on a weekly basis (the "120% Service"). The Atrium Parties' first issue lacks merit for three reasons.
1. The Atrium Parties waived the prior-material-breach defense.
Under their first issue, the Atrium Parties assert that ImageFIRST cannot recover on its breach-of-contract claim as a matter of law because the trial evidence conclusively proves that ImageFIRST materially breached the Agreement before Atrium breached the Agreement. The alleged material breach is the failure to provide the 120% Service starting in February 2013. This contention is an affirmative defense that the Atrium Parties were required to plead.[1] Because the Atrium Parties did not plead it, they waived it unless the parties tried the defense by consent.[2]
On appeal, the Atrium Parties assert that the parties did just that. The majority does not address this argument. If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings.[3] To determine whether the issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence of trial of the issue.[4] Under this court's precedent, one of the essential elements of ImageFIRST's breach-of-contract claim is that ImageFIRST tendered performance or was excused from doing so.[5] The Atrium Parties cite trial evidence as to ImageFIRST's failure to provide the 120% Service after February 1, 2013, but the Atrium Parties also rely on this evidence to show that, as a matter of law, ImageFIRST did not prove the performance element of its breach-of-contract claim. Because the evidence on which the Atrium Parties rely is germane to issues other than the prior-material-breach defense, this evidence does not show trial of the defense.[6] The record does not contain evidence showing trial of the prior-material-breach defense.[7] This defense was not tried by express or implied consent of the parties.[8] Therefore, the Atrium Parties *319 waived this defense, and they may not obtain a reversal of the trial court's judgment based on this defense.[9]
2. The trial evidence does not conclusively prove that ImageFIRST breached the Agreement by failing to give Atrium the 120% Service.
The Atrium Parties also argue that the trial evidence proves as a matter of law that ImageFIRST breached the Agreement starting on February 1, 2013, by failing to provide the 120% Service to Atrium. Evidence at trial showed that, starting on February 1, 2013, ImageFIRST made deliveries more frequently than the three deliveries per week that ImageFIRST had been making. Evidence also showed that when ImageFIRST stopped the three-deliveries-per-week schedule, ImageFIRST also stopped providing the 120% Service. The Atrium Parties cite the trial testimony of Ryan Steen, ImageFIRST's President, on this point, and suggest that Steen conceded that ImageFIRST breached the Agreement starting on February 1, 2013. Though Steen may have agreed that ImageFIRST abandoned the three-deliveries-per-week schedule and stopped providing the 120% Service on February 1, 2013, Steen did not give testimony that rises to the level of a judicial admission that ImageFIRST breached the Agreement by engaging in this conduct.[10]
A crucial premise of the Atrium Parties' argument is that the Agreement requires ImageFIRST to provide the 120% Service throughout its term and even if ImageFIRST was making more than three deliveries per week. In the Agreement, Atrium and ImageFIRST agreed that "[t]he terms of this contract shall apply to all subsequent increases or additions to such service." The parties also agreed that "[n]o modification of this agreement will be binding unless in writing and signed by [ImageFIRST]." The record contains no evidence of any written modification of the Agreement. If ImageFIRST agreed to provide the 120% Service throughout the Agreement's term and even if ImageFIRST was making more than three deliveries per week, then it would appear that ImageFIRST was breaching the Agreement starting on February 1, 2013.[11]
The provision of the Agreement that addresses the 120% Service provides as follows: "I further understand the three times per week delivery system with 40% of my total inventory being available for use at each delivery (120% total available weekly) and will be billed for 100% weekly."[12] The "I" appears to refer to Atrium's agent. The Atrium Parties assert that, under this provision, ImageFIRST agreed to provide the 120% Service throughout the Agreement's term and regardless of how many deliveries per week ImageFIRST was making. In this provision, the parties discuss the 120% Service only in the context of the "three times per week delivery system," which was discontinued at Atrium's *320 request on January 31, 2013. In the Agreement, the parties anticipated that there might be "subsequent increases or additions" to ImageFIRST's services under the Agreement. Although the parties agreed to various terms in the first page of the Agreement, the parties did not agree that ImageFIRST would provide the 120% Service regardless of how many deliveries per week ImageFIRST was making. Under the Agreement's unambiguous language, the parties were free to increase the number of deliveries to more than three times per week, and ImageFIRST agreed to provide the 120% Service only when it was making three deliveries per week.[13] Thus, though the trial evidence showed that ImageFIRST stopped providing the 120% Service on February 1, 2013, this evidence did not show that ImageFIRST breached the Agreement. The trial evidence does not prove as a matter of law that ImageFIRST breached the Agreement starting on February 1, 2013, by failing to provide the 120% Service to Atrium.
3. The trial evidence is legally and factually sufficient to support the trial court's finding that ImageFIRST fully performed its obligations under the Agreement.
Under this court's precedent, one of the essential elements of ImageFIRST's breach-of-contract claim is that ImageFIRST tendered performance or was excused from doing so.[14] The trial court found that ImageFIRST fully performed its obligations under the Agreement. On appeal the Atrium Parties argue that the trial evidence is legally and factually insufficient to support this finding.
When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.[15] We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.[16] We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue.[17] The factfinder is the only judge of witness credibility and the weight to give to testimony.[18]
When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding.[19] After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[20] The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony.[21] We may not substitute our own judgment for that of the trier of fact, even if we would reach a different *321 answer on the evidence.[22] The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment.[23]
The Atrium Parties base their sufficiency challenges on the evidence showing that ImageFIRST did not provide the 120% Service starting on February 1, 2013. Yet, the evidence shows that beginning on that date, ImageFIRST made more than three deliveries per week, and, in this scenario, the Agreement does not require ImageFIRST to provide the 120% Service. Under the applicable standards of review, the trial evidence is legally and factually sufficient to support the trial court's finding that ImageFIRST fully performed its obligations under the Agreement.
Flaws in the Majority's Analysis
Though the majority concludes that the Atrium Parties' arguments under their first issue lack merit, the majority applies a different analysis. Contrary to the unambiguous language of the Agreement, the majority indicates that the Agreement required ImageFIRST to provide the 120% Service throughout the Agreement's term and even if ImageFIRST was making more than three deliveries per week. The majority concludes that this requirement does not conflict with the trial court's finding that ImageFIRST fully performed its obligations under the Agreement because the parties agreed to modify the Agreement to eliminate this requirement. There is no allegation or evidence of any written modification, so any such modification of the Agreement would have been an oral modification. But, if the Agreement contained such a requirement, then the parties agreed that this requirement "shall apply to all subsequent increases or additions to such service" and that "[n]o modification of this agreement will be binding unless in writing and signed by [ImageFIRST]."[24]
Though ImageFIRST argues on appeal that the parties agreed to such an oral modification, the only evidence that ImageFIRST cites is testimony by Steen that ImageFIRST had to provide the 120% Service under a three-delivery-per-week schedule but that this changed when the parties negotiated a "different delivery schedule." This evidence seems to show an agreement to increase the frequency of the deliveries under the Agreement rather than an oral agreement to modify the Agreement. There does not appear to be legally sufficient evidence to show that the parties agreed to an oral modification of the Agreement. Even if there were evidence showing an oral modification, the parties agreed that oral modifications of the Agreement would not be binding, and under recent Texas precedent, courts generally enforce such agreements.[25] The trial evidence does not raise a fact issue as to any potential exception to the general enforceability of the parties' ban on oral modifications.[26] So, the better course would *322 be to reject the Atrium Parties' arguments based on the absence of a contractual obligation to provide the 120% Service under an increased delivery schedule, rather than to rely on an oral-modification theory.
For the reasons stated above, though I join the court's judgment, I respectfully decline to join the majority opinion.

Robert Scott Poston, Starskey Bomer, and David Dale.

Appellee filed a petition in intervention in an existing lawsuit initiated by appellants against Siddiqui. In its second amended petition, appellee alleged claims against appellants and several individual doctors. Eventually appellee nonsuited the individual defendants.

See Tex. R. Civ. P. 94 ; In re Marriage of Moore , No. 14-15-00859-CV, 2017 WL 3089962, at *2 (Tex. App.-Houston [14th Dist.] Jul. 20, 2017, pet. filed) (mem. op.).

See In re Marriage of Moore , 2017 WL 3089962, at *2.

See Tex. R. Civ. P. 67, 301 ; In re Marriage of Moore , 2017 WL 3089962, at *2.

See In re Marriage of Moore , 2017 WL 3089962, at *2.

See Dror v. Mushin , No. 14-12-00322-CV, 2013 WL 5643407, at *6 (Tex. App.-Houston [14th Dist.] Sep. 23, 2013, pet. denied) (mem. op.).

See In re Marriage of Moore , 2017 WL 3089962, at *2.

See itation index="47" url="https://cite.case.law/citations/?q=2017%20WL%203089962">id.

See itation index="48" url="https://cite.case.law/citations/?q=2017%20WL%203089962">id. After trial, the Atrium Parties moved the trial court for leave to amend their pleadings as to the prior-material-breach defense on the ground that this issue had been tried by consent. The Atrium Parties do not assert on appeal that the trial court erred in denying this motion, and, in any event, the record reflects that this defense was not tried by express or implied consent of the parties.

See itation index="49" url="https://cite.case.law/citations/?q=2017%20WL%203089962">id.

See Regency Advantage Ltd. P'ship v. Bingo Idea-Watauga, Inc. , 936 S.W.2d 275, 278 (Tex. 1996) ; In re S.A.M. , 321 S.W.3d 785, 790, n. 1 (Tex. App.-Houston [14th Dist.] 2010, no pet.).

ImageFIRST's oral-modification argument and the majority's reliance on this argument are discussed later in this opinion.

An agent of Atrium and an agent of ImageFIRST signed at the bottom of each page, and at least one of the agents appears to have signed the second page on December 16, 2012, more than a month after an agent of Atrium signed the first page. Nonetheless, the parties agree that the two pages in Plaintiff's Exhibit 1 constitute the Agreement, and it is presumed that these two pages are the Agreement for the purposes of this opinion.

See Highmount Expl. & Prod. LLC v. Harrison Interests, Ltd. , 503 S.W.3d 557, 566 (Tex. App.-Houston [14th Dist.] 2016, no pet.).

See Dror , 2013 WL 5643407, at *6.

City of Keller v. Wilson , 168 S.W.3d 802, 823 (Tex. 2005).

See ids="8943104" index="55" url="https://cite.case.law/sw3d/168/802/#p823">id. at 827.

See itation index="56" url="https://cite.case.law/citations/?q=2017%20WL%203089962">id.

See ids="8943104" index="57" url="https://cite.case.law/sw3d/168/802/#p823">id. at 819.

Maritime Overseas Corp. v. Ellis , 971 S.W.2d 402, 406-07 (Tex. 1998).

Id.

GTE Mobilnet of S. Tex. v. Pascouet , 61 S.W.3d 599, 615-16 (Tex. App.-Houston [14th Dist.] 2001, pet. denied).

Maritime Overseas Corp. , 971 S.W.2d at 407.

Pascouet , 61 S.W.3d at 616.

The Atrium Parties have not asserted in the trial court or on appeal that the statute of frauds would bar enforcement of any alleged oral modification. See Tex. Bus. & Com. Code Ann. § 26.01(b)(6) (West, Westlaw through 2017 1st C. S.).

See Shields Ltd. P'ship v. Bradberry , 526 S.W.3d 471, 481-85 & n.44 (Tex. 2017) ; see also Cooper Valves, LLC v. ValvTechnologies , 531 S.W.3d 254, 263-64 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (enforcing contract provision in which parties prohibited oral modifications of the contract).

See Shields Ltd. P'ship , 526 S.W.3d at 481-85 & n.44.