# IN THE SUPREME COURT OF TEXAS

No. 18-0228

ATRIUM MEDICAL CENTER, LP AND TEXAS HEALTHCARE ALLIANCE LLC,
PETITIONERS,

v.

HOUSTON RED C LLC D/B/A IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS,
RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**Argued November 5, 2019**

JUSTICE BLAND delivered the opinion of the Court.

In this contract dispute, we determine whether a liquidated damages provision is enforceable. The breaching party seeks to avoid the provision on the ground that it is a penalty. The trial court enforced the provision, ruling that it was not a penalty because it reasonably estimated the harm that would result from a breach, and actual damages were difficult to predict when the contract was made.[1] On those grounds, the court of appeals affirmed.[2]

---

[1] *See Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991); *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014).

[2] 546 S.W.3d 305, 316 (Tex. App.—Houston [14th Dist.] 2017). On the issue of attorney's fees—not contested here—the court of appeals reversed and remanded.

Because a provision not designed to be a penalty can nevertheless operate as one, our precedent requires a third step: courts must examine whether, at the time of the breach, an "unbridgeable discrepancy" exists between actual and liquidated damages.[3] Because the breaching party in this case did not prove an unbridgeable discrepancy or otherwise demonstrate that the provision operated as a penalty, we affirm the judgment of the court of appeals.

# I

Atrium Medical Center LP[4] owns and operates a sixty-bed acute care hospital. In a five-year contract, Atrium agreed to pay ImageFIRST Healthcare Laundry Specialists[5] for specialty laundry services. In exchange, ImageFirst agreed to meet the hospital's requirements for clean, health-care quality linens. The parties expected that the invoices for these services would vary, depending on Atrium's weekly linen demand.

Several months into the contract, Atrium experienced financial distress and stopped paying ImageFirst's invoices.[6] ImageFirst continued to deliver linens for several more months. But Atrium eventually canceled the contract and entered into an agreement with another vendor. Atrium's cancellation triggered the liquidated damages provision.

At the outset, the contract defined the "agreement value" to be $2,616.66 per week (the first week's rental price for the linens). The weekly invoice amount rose in the following months,

---

[3] *FPL Energy*, 426 S.W.3d at 72.

[4] Texas Healthcare Alliance LLC is the general partner of Atrium.

[5] ImageFIRST—referred to throughout as "ImageFirst"—is the assumed business name for Houston Red C LLC.

[6] The financial crisis stemmed, at least in part, from fraud and embezzlement by a former manager of Atrium's general partner.

based on Atrium's demand. ImageFirst's final weekly invoice charged $8,066.79. At the time Atrium canceled, approximately four years remained on the contract.[7]

Atrium challenges ImageFirst's liquidated damages, which are calculated based on the remaining weeks of the contract term. The contract required Atrium to pay a cancellation charge equal to 40 percent of the greater of (i) the initial "agreement value" and (ii) the current invoice amount, multiplied by the number of weeks remaining in the agreement's term:

> The length of this agreement is for sixty (60) months from the date of the first delivery and therefore[8] for the same time period unless cancelled by either party, in writing, at least ninety (90) days prior to any termination date. The terms of this contract shall apply to all subsequent increases or additions to such service. There will be a minimum weekly billing of 60% of this agreement value or 60% of the current invoice amount whichever is greater. Customer may discontinue service at any time provided customer pays Company a cancellation charge of 40% of the agreement value or the current invoice amount, whichever is greater, multiplied by the number of weeks remaining under this agreement. The customer agrees that this cancellation charge is not punitive, but a reimbursement to Company for related investments to service the customer. Customer agrees to pay attorneys fees and cost[s] necessary to collect monies due.

Atrium further contends that the provision limits ImageFirst to reimbursement for the linens and supplies purchased to service Atrium, less the cost of linens repurposed for another customer.

The trial court ruled that the liquidated damages provision was not a penalty and that ImageFirst was entitled to its contractual profit. The court calculated the amount owed based on Atrium's last weekly invoice because "ImageFirst's last invoice of $8.066.79 to Atrium [was] greater than the original Contract amount of $2,616.66." The court then determined that

---

[7] Atrium owed ImageFirst $237,512.12 in unpaid invoices and interest, an amount not in dispute before this Court.

[8] At trial, Ryan Steen, President of ImageFirst, clarified—and Atrium did not dispute—that the contract should have read "thereafter," not "therefore."

"ImageFirst [was] entitled to recover 40% of the last invoice multiplied by the 222-weeks remaining under the Contract, totaling $716,330.95."[9]

The court of appeals affirmed the award of liquidated damages.[10] Based on the trial court's findings, it held that, at the time of contracting, actual damages "were very difficult, if not impossible to determine," because this requirements contract depended upon Atrium's uncertain needs:

> (a) the parties knew the volume of laundry services would fluctuate over time as the census changed and given the needs of individual patients; (b) the parties could not predict how long linens would last; (c) the parties could not determine the frequency of deliveries that would be required to service Atrium's account; (d) the parties could not determine Atrium's rate of loss of [ImageFirst's] linens; and (e) the parties could not determine the amount of [ImageFirst's] general overhead expenses and resources that would be expended to service Atrium's account.[11]

The court of appeals also explained that the 40 percent cancellation charge was not a penalty because "the evidence of record demonstrated that 40% was a reasonable forecast" of the harm resulting from canceling the contract.[12] It rejected Atrium's interpretation that the cancellation provision limited ImageFirst to its reliance damages.[13] We granted review.

## II

Texas favors freedom of contract, as a policy "firmly embedded in our jurisprudence."[14] But tempering this policy is the "universal rule" that damages for breach of contract are limited to

---

[9] The trial court also awarded interest "[p]ursuant to the Contract's Finance Charge Provision."

[10] 546 S.W.3d 305, 316 (Tex. App.—Houston [14th Dist.] 2017).

[11] *Id.* at 315.

[12] *Id.* at 315–16.

[13] *Id.*

[14] *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016).

"just compensation for the loss or damage actually sustained." *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952). Accordingly, courts carefully review liquidated damages provisions to ensure that they "adhere to the principle of just compensation."[15]

In keeping with this approach, an enforceable liquidated damages contract provision establishes an "acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach."[16] A damages provision that violates the rule of just compensation, however, and functions as a penalty, is unenforceable.[17] Liquidated damages must not be punitive, neither in design nor operation.[18]

In *Phillips v. Phillips*, we emphasized that courts will enforce liquidated damages provisions when: (1) "the harm caused by the breach is incapable or difficult of estimation," and (2) "the amount of liquidated damages called for is a reasonable forecast of just compensation."[19] In applying the first two rules, courts examine the circumstances at the time the agreement is made.[20] The party seeking liquidated damages bears the burden of showing that the provision, as drafted, accounts for these two considerations.[21]

---

[15] *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952).

[16] *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005) (citing *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 664 (Tex. 2005)).

[17] *See Stewart*, 245 S.W.2d at 486 ("A party generally should be awarded neither less nor more than his actual damages. A party has no right to have a court enforce a stipulation which violates . . . that rule."); *Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) ("Enforcement of a penalty . . . violates public policy.").

[18] *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014). Thus, a recital proclaiming that a liquidated damages provision is not a penalty will not save a provision that operates as one. *See Stewart*, 245 S.W.2d at 486.

[19] *Phillips*, 820 S.W.2d at 788 (citing *Rio Grande Valley Sugar Growers, Inc. v. Campesi*, 592 S.W.2d 340, 342 n.2 (Tex. 1979)).

[20] *FPL Energy*, 426 S.W.3d at 69–70.

[21] *See Stewart*, 245 S.W.2d at 486 ("An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, *unless* [it meets two

A properly designed liquidated damages provision, however, may still operate as a penalty due to unanticipated events arising during the life of a contract. Thus, we observed in *Phillips* that courts must also examine whether "the actual damages incurred were much less" than the liquidated damages imposed, measured at the time of the breach.[22]

When a contract's damages estimate proves inaccurate, and a significant difference exists between actual and liquidated damages, a court must not enforce the provision. Applying this rule in *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, we held that the "unacceptable disparity" between damages assessed under the contract (approximately $29 million) and actual damages (approximately $6 million) made the liquidated damages provision unenforceable.[23] At the time of contracting, damages from a breach in that case "were difficult to estimate" and the liquidated damages provision "on [its] face, reasonably forecast damages."[24] Nonetheless, we held the provision unenforceable because it "operate[d] with no rational relationship to actual damages."[25] When an "unbridgeable discrepancy" exists between "liquidated damages provisions as written and the unfortunate reality in application," the provisions are not enforceable.[26] To avail itself of

criteria]." (emphasis added) (quoting RESTATEMENT (FIRST) OF CONTRACTS § 339 (AM. LAW INST. 1932))). *Phillips* repeated that proposition, stating that the court "must" make two "find[ings]" "to enforce a contractual damages provision." *Phillips*, 820 S.W.2d at 788. So did *FPL Energy*. 426 S.W.3d at 69 (noting that there are "two indispensable findings a court must make to enforce contractual damages provisions").

[22] *Phillips*, 820 S.W.2d at 788.

[23] *FPL Energy*, 426 S.W.3d at 72.

[24] *Id.* at 70–71.

[25] *Id.* at 72.

[26] *Id.*

this defense, the breaching party challenging a provision must demonstrate this unbridgeable discrepancy.[27]

In addition to claiming that the provision is unenforceable, Atrium further contends that the trial court and the court of appeals misinterpreted the provision by upholding a recovery of a contractual profit, i.e., ImageFirst's expectancy damages. American law traditionally recognizes three types of recovery to compensate for a breach of contract: expectancy, reliance, and restitution damages.[28] Expectancy damages award a contract plaintiff the benefit of its bargain; reliance damages compensate the plaintiff for out-of-pocket expenses; and restitution damages restore to the plaintiff a benefit that it had conferred on the defendant.[29]

Bearing these principles in mind, we turn to whether the cancellation provision in this case is enforceable and allows for a recovery of a contractual profit.

## III

### A

Ryan Steen, president of ImageFirst, testified that, at the time the parties made their agreement, it was difficult to estimate the damages that would result if Atrium canceled the contract. At the time of trial, Steen had worked for ImageFirst for 11 years and had performed under approximately 120 contracts in two markets, including Houston. He explained that a customer's "burn rate" of linens—the percent of linens that must be discarded per cycle because they are stained or otherwise unusable—is unknown and difficult to calculate at the outset. And a

---

[27] *Id.*; *see also Phillips*, 820 S.W.2d at 788. A penalty defense is an affirmative defense of illegality, which the breaching party must establish unless "it is apparent on the face of the petition and established as a matter of law." *Phillips*, 820 S.W.2d at 789.

[28] *Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007) (Brister, J., concurring in part and dissenting in part).

[29] *Id.*

customer's patient load can fluctuate, making Atrium's weekly demand for linens unpredictable. All this, in turn, affected ImageFirst's ability to forecast its weekly gross margin.

As it turned out, Atrium's patient load increased in the first months of the contract. ImageFirst escalated its deliveries to Atrium from two or three days a week to five or seven days a week. Corresponding to this increased usage, Atrium's weekly invoices increased from approximately $2,600 (when the contract was signed) to between approximately $7,000–$8,000 in later weeks. Steen stated that these variations are "typical in the industry." Steen's testimony supports the trial court's finding that damages for breach of the contract were difficult to predict at the time of contracting.

Atrium presented no evidence rebutting Steen's testimony. Instead, Atrium challenged ImageFirst's interpretation of the cancellation provision, contending that the contract limited ImageFirst to its reliance damages, that is, the cost of linens and supplies purchased in connection with the contract. Relying on ImageFirst's invoices, Atrium observed that this reimbursement cost is not difficult to estimate. Atrium asserts that these damages are determinable, and significantly less, than the amount provided for in the liquidated damages provision. We reject Atrium's challenge for two reasons.

First, the contract did not limit ImageFirst's damages to reimbursement of its used linens and supplies. Atrium urges this reading by noting that the liquidated damages were intended to "reimburse[] [the] Company for related investments to service the customer." The cancellation provision, however, contemplates recompense for ImageFirst's lost benefit of the bargain—or expectancy—damages. It defines "reimbursement" for the loss of ImageFirst's "investment" as equal to a percentage of the "agreement value" or most recent invoice, multiplied by the remaining

8

weeks of the contract. This measure does not limit ImageFirst to reimbursement for its out-of-pocket costs.

Second, difficulty of estimation is evaluated based on the circumstances at the time the agreement is made. In this requirements contract, the parties expected demand would vary, and thus they could not know the average weekly gross margin at the time they made the agreement. Atrium relies on the actual invoices, which eventually varied little. Because courts assess the difficulty of estimation from the perspective of the parties at the time of contracting, however, Atrium's argument that damages became calculable at the time of the breach is unavailing.[30] The significant difference between the initial invoice and those preceding cancellation indicates that damages were hard to estimate until laundry services were under way.

**B**

Atrium next challenges the trial court's finding that the contract's estimate of damages was a reasonable forecast of just compensation. ImageFirst, however, presented evidence that the gross margin amount was based on the franchisor's "historical profit margin" from over forty years in the industry. Steen also examined "the books and records" of ImageFirst to determine "if that 40 percent [was] about right" for ImageFirst in particular. He found that it was: "[G]oing back to 2012, our [profit] margin, with the exception of 2013, hovered between 32 and 39 percent. . . . 2013 was an outlier in that it was only 9.2 [percent] and that was almost certainly because of the outstanding balance from Atrium."

---

[30] *FPL Energy*, 426 S.W.3d at 69–70. Atrium similarly contends that ImageFirst had months of "objective facts, figures, or data" "in hand at the time of breach so it could have simply calculated the difference in costs and revenues before and after the Atrium cancellation." But courts must evaluate whether damages were difficult to estimate at the time of contracting. *Id.*

Atrium responds that ImageFirst used this agreement for all of its franchises, without regard to local variations in profitability, so the 40 percent number is per se unreasonable.[31] ImageFirst's use of a form business contract is not unreasonable if other evidence demonstrates the forecast's reasonableness for these parties. In this case, the evidence did. Because Steen explained that 40 percent reflected a reasonable estimate for ImageFirst's margin based on its actual historical performance, the trial court did not err in finding it to be a reasonable forecast.[32]

On appeal, Atrium refers to publications citing gross margins in mostly unrelated industries. But margins in other industries are of little relevance and, importantly, Atrium did not present these publications to the trial court. We do not consider them. Atrium did not counter the reasonableness of a 40 percent gross margin on a laundry-services contract with evidence at trial. And Steen also testified, without contradiction, that a five-year contract term is the industry standard. Whether a liquidated damages provision is a penalty is a legal question, but its resolution may depend on underlying facts.[33] The evidence supports the trial court's resolution here.

Atrium further responds that the provision is an unreasonable forecast because the weekly invoice used to calculate damages could be above-average. Liquidated damages allow parties to

---

[31] On cross-examination of Steen, Atrium elicited testimony that "the contract comes from the franchisor. We're required to use their contract . . . . The only term that we can change is the length, and we did not."

[32] Atrium argues that the liquidated damages provision did not reasonably forecast damages because the 40 percent profit margin was based on "an alleged average from 20 other franchisees in markets throughout the country" and, accordingly, was not sufficiently particularized. In support, Atrium points to *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 865 (Tex. 2017). There, the Court held that the plaintiff corporation presented legally insufficient evidence to support a finding that it sustained lost profits due to the departure of an employee, where testimony about profitability was lacking. ImageFirst, however, need only have demonstrated that the provision was a *reasonable forecast* of just compensation. Steen explicitly testified that the 40 percent profit margin proved historically accurate for the franchise and, on cross-examination, stated that the margin on its contracts did not vary for differently-sized customers.

[33] *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991).

"allocate the risk of uncertainty over the actual loss."[34] The parties are expected to negotiate a reasonable—not perfect—forecast of just compensation. Here, it was reasonable to choose the greater of the first or last invoice, given that demand for the services was under Atrium's control, and later invoices could more accurately reflect losses over the life of the remaining contract if it were prematurely canceled. As we discuss separately, there is a backstop against a forecast that is inordinate when compared with actual damages: proof of a large variance will render a provision unenforceable.

The facts in this case differ from those cases in which a contract facially imposed amounts beyond just compensation. In *Phillips*, the liquidated damages provision required the breaching party to pay a multiple of actual damages—as drafted, this violated the first two *Phillips* rules.[35] And provisions that use the same damage measure for breaches of varying magnitude are also facially unreasonable.[36] The contract provision in this case neither multiplies actual damages nor penalizes dissimilar breaches with the same broad brush.

We conclude that the record supports the trial court's findings that, at the time of contracting, (1) damages resulting from Atrium's breach were difficult to estimate and (2) the liquidated damages provision reasonably forecast just compensation.

## C

Because ImageFirst carried its burden, we turn to whether Atrium met its burden to show that the liquidated damages provision was otherwise unreasonable when compared with

---

[34] *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 767 (Tex. 2005).

[35] *Phillips*, 820 S.W.2d at 789.

[36] *See Stewart*, 245 S.W.2d at 487 (holding provision unenforceable because it assessed same damages for major and minor breaches).

11

ImageFirst's actual damages.[37] While the court of appeals correctly observed that liquidated damages must compensate "for losses sustained and no more," it did not examine whether an "unbridgeable discrepancy" existed between actual and liquidated damages at the time Atrium canceled the contract.[38] The evidence does not demonstrate such a discrepancy, however, so the outcome remains the same.

As we observed in *Phillips*, "to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant may be required to prove what the actual damages were."[39] Atrium offered no evidence that an unbridgeable discrepancy existed between ImageFirst's actual expectancy damages and its liquidated damages under the contract. Rather, Atrium contended that ImageFirst's *reliance* damages were much less. As Atrium's counsel told the trial court:

> [I]n breach of contract cases, there are two measures of damages that are equally applicable. There's the expectation, lost profits, in other words; or there's a reliance interest which is basically putting the non-breaching party in the same place that the non-breaching party was [in] before the contract was executed.

---

[37] *Phillips*, 820 S.W.2d at 788; *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 72 (Tex. 2014).

[38] *See FPL Energy*, 426 S.W.3d at 70, 72; RESTATEMENT (SECOND) OF CONTRACTS § 356 (AM. LAW. INST. 1981) ("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or *actual* loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." (emphasis added)).

[39] *Phillips*, 820 S.W.2d at 788 (citations omitted). In *Caudill v. Keller Williams Realty, Inc.*, the Seventh Circuit cited *FPL Energy* for the proposition that Texas courts "will not enforce punitive contractual damages provisions," including where there is an "unbridgeable discrepancy" between liquidated and actual damages. 828 F.3d 575, 577 (7th Cir. 2016) (citing *FPL Energy*, 426 S.W.3d at 69, 72). Judge Posner supplemented *FPL Energy*'s language with a quote from *Lake River Corp. v. Carborundum Co.*, where the Seventh Circuit, applying Illinois law, concluded that "the need for estimation [of damages] at th[e] time [of contracting] must be shown by reference to the likely difficulty of measuring the actual damages from a breach of contract *after the breach occurs*." 828 F.3d at 577 (citing *Lake River Corp.*, 769 F.2d 1284, 1289–90 (7th Cir. 1985) (emphasis added)). We have never rejected a liquidated damages provision because actual damages were calculable *after breach*. We decline to do so now, as such a rule would forbid parties from agreeing to even reasonable liquidated damages provisions.

Now, by stating expressly that this cancellation fee was a reimbursement to the company . . . this contract made an election that it was going to try to use a liquidated damages provision as a substitute for reliance damages.

We have rejected Atrium's argument that the contract limited ImageFirst's damages to a reliance measure. And Atrium did not adduce evidence that the liquidated damages provision failed to approximate ImageFirst's damages for lost benefit of its bargain. Thus, the trial court had no basis to conclude that the liquidated damages were out of step with actual damages.

Moreover, Atrium adduced no evidence that mitigation would have reduced ImageFirst's actual damages such that liquidated damages no longer served as just compensation.[40] Courts must consider mitigation when determining whether actual damages diverge significantly from liquidated damages.[41] The burden remains on the party seeking to prove that the liquidated damages provision is an unenforceable penalty to show how much actual damages were reduced, or could have been reduced, by mitigation.

Atrium points to testimony that ImageFirst repurposed Atrium's linens to service other contracts to support its mitigation argument. Although Steen acknowledged that ImageFirst "repurposed" some of Atrium's linens after Atrium canceled the contract, Atrium did not attempt to value those linens or to prove that repurposing them materially reduced ImageFirst's expectancy damages over the remaining life of the contract. When an injured party "would have entered into

---

[40] Mitigation is usually required in breach of contract cases. "Under mitigation principles, the long-standing law of this state requires a claimant to mitigate damages if it can do so with 'trifling expense or with reasonable exertions.'" *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999) (quoting *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 426 (Tex.1995)).

[41] We disapprove of courts of appeals opinions that may be read to exclude consideration of mitigation altogether. *See, e.g.*, *Nautilus Training Ctr. No. 2, Inc. v. Seafirst Leasing Corp.*, 647 S.W.2d 344, 347 (Tex. App.— Corpus Christi-Edinburg 1982, no pet.) ("When there exists a valid liquidated damages clause in a contract, the courts will enforce it, and in doing so, need not consider the issue of mitigation."); *Robinson v. Granite Equip. Leasing Corp.*, 553 S.W.2d 633, 637 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) ("[T]he question of mitigation of damages does not arise where there is a valid provision for liquidated damages.").

both transactions but for the breach, [it] has 'lost volume' as a result of the breach."[42] Atrium provided no evidence that ImageFirst replaced Atrium as a customer and could handle no others. Because Atrium did not attempt to quantify either ImageFirst's expectancy damages or the effect of mitigation, it did not demonstrate that an "unbridgeable discrepancy" exists between ImageFirst's actual and liquidated damages.

A breaching party need not prove the other party's actual damages to invalidate penalty provisions in every case—*Phillips* and *Stewart* demonstrate the opposite. The liquidated damages provisions in those cases were facially invalid, without extrinsic evidence of actual damages, as the measures at the outset could not reasonably forecast actual damages. But when a liquidated damages provision is facially reasonable, the breaching party must present evidence from which the court may find that an "unbridgeable discrepancy" exists between actual and liquidated damages.[43]

\*　　\*　　\*

We hold that, at the time the parties' agreement was made, (1) the harm that would result from a breach was difficult to estimate and (2) the liquidated damages provision reasonably forecast just compensation. We further hold that the breaching party failed to demonstrate an "unbridgeable discrepancy" between liquidated and actual damages, measured at the time of the breach, to invalidate an otherwise valid contract provision. Accordingly, we affirm the judgment of the court of appeals.

---

[42] RESTATEMENT (SECOND) OF CONTRACTS § 350 cmt. d ("The mere fact that an injured party can make arrangements for the disposition of the goods or services that he was to supply under the contract does not necessarily mean that by doing so he will avoid loss."); *see Gunn Infiniti,* 996 S.W.2d at 858 (citing RESTATEMENT (SECOND) OF CONTRACTS § 350).

[43] *FPL Energy*, 426 S.W.3d at 72.

14

_____
Jane N. Bland
Justice

OPINION DELIVERED:  February 7, 2020